**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
IN RE:                                              :
                                                    :
OPENAI, INC.,                                       :     25-md-3143 (SHS) (OTW)
COPYRIGHT INFRINGEMENT LITIGATION,                  :
                                                    :     **OPINION & ORDER RE: PRODUCTION OF**
                                                    :     **TEXT AND SOCIAL MEDIA MESSAGES**
This Document Relates To:                           :     **(ECF NOS. 390, 391, 432, 528, 529, 584,**
**All Actions**                                     :     **586, 642, 643, 665)**
                                                    :
---------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

Pending now before the Court are Plaintiffs' and OpenAI's motions regarding the collection and production of text and social media messages. (*See* ECF Nos. 528, 529, 642, 643).[1] Plaintiffs assert that OpenAI's procedures for collection and production were inadequate because (1) OpenAI did not engage in live custodial interviews for the majority of its custodians and (2) personal counsel for Mr. Altman and Mr. Brockman conducted an initial "privacy" review before OpenAI's outside counsel conducted its responsiveness review, which resulted in OpenAI over-withholding and over-redacting text and social media messages. (ECF 529). In turn, OpenAI alleges that the Daily News failed to collect and search text and social media messages for several of its custodians who indicated that they used various text and/or social media applications for work purposes. (ECF 642). Plaintiffs and OpenAI both seek an order compelling the other to redo their collection and production of text and social media messages.

For the reasons set forth below, Plaintiffs' motion is **GRANTED in part, DENIED in part,** and OpenAI's motion is **DENIED**.

---

[1] Unless otherwise indicated, all references to the docket refer to 25-MD-3143.

I.  **BACKGROUND**

The Court assumes familiarity with the facts of this case and summarizes the factual and procedural history relevant to the pending motions.

The origin of this dispute dates back to the Fall of 2024. In October 2024, the pre-MDL plaintiffs in the Authors Cases[2] alleged that OpenAI had refused to produce text and social media messages for certain of its custodians, including Sam Altman and Greg Brockman, claiming that such messages were not relevant; that it lacked possession, custody, or control over these messages; and, in the alternative, that California Labor Code § 980 prohibited OpenAI from asking its employees for their social media. (*See* 23-CV-8292, ECF 230). On October 23, 2024, the pre-MDL Authors Plaintiffs filed a motion seeking to compel OpenAI to produce text and social media messages for OpenAI employees who used their personal devices and social media accounts for work purposes. (*See* 23-CV-8292, ECF Nos. 230, 231).[3] OpenAI filed its opposition on October 28, 2024, arguing primarily that it (1) was already meeting its obligations to produce text messages and (2) was prohibited from asking its employees for their social media accounts by § 980, making its custodians' social media messages outside of OpenAI's custody, possession, or control. (*See* 23-CV-8292, ECF 243). The Court heard oral argument at the October 30, 2024, discovery status conference and directed the parties to continue meeting and conferring on: whether OpenAI would search for and produce text and social media messages, whether there were alternative ways to resolve the dispute (e.g., through interrogatories or subpoenas), and whether the Authors Plaintiffs would

---

[2] Before the MDL convened, the "Authors Plaintiffs" included the plaintiffs in Case Nos. 23-CV-8292, 23-CV-10211, and 24-CV-84.

[3] The unredacted, sealed version of the motion is available at 23-CV-8292 ECF 230. The redacted, public version is available at 23-CV-8292 ECF 231.

withdraw their motion if the parties were able to resolve their dispute. (*See* 23-CV-11195, ECF 304 at 4); (October 30, 2024, Tr., 23-CV-8292, ECF 250 at 46).

Shortly thereafter, on November 18, 2024, the pre-MDL News Plaintiffs[4] filed another motion: (1) arguing that OpenAI refused to confirm that it had asked all of its 26 custodians whether they used text messaging for work, and (2) incorporating the Authors Plaintiffs' argument that OpenAI is not barred by § 980, and arguing that OpenAI should produce social media messages for its custodians who use social media for work. (23-CV-11195, ECF 309). The News Plaintiffs' motion sought an order compelling OpenAI to produce text and social media messages for its custodians and to establish a common framework for the parties' collection and production of the same. (*Id.*). OpenAI filed its opposition on November 21, 2024, arguing that it was already conducting a reasonable investigation as to its custodians' use of text messages, and that § 980 prohibited OpenAI from asking its employees for access to their social media accounts. (*See* 23-CV-11195, ECF 329). On December 2, 2024, I issued an Opinion & Order granting the SDNY Plaintiffs' motions to compel OpenAI to produce social media messages on a finding that "[Section] 980 does not prohibit employers from producing relevant, work-related messages from [employees'] social media accounts." *See Authors Guild v. OpenAI Inc.*, 23-CV-8292 (SHS) (OTW), 2024 WL 4949109, at *3 (S.D.N.Y. Dec. 2, 2024).[5]

---

[4] Before the MDL convened, the "News Plaintiffs" included the plaintiffs in Case Nos. 23-CV-11195, 24-CV-3285, and 24-CV-4872.

[5] The pre-MDL News Plaintiffs' motion also alleged that Microsoft refused to produce Slack messages between Microsoft and OpenAI. Because Microsoft did not raise arguments under § 980, this dispute was resolved separately at the December 3, 2024, status conference. *Authors Guild*, 2024 WL 4949109, at *1; (23-CV-8292, ECF 293).

Approximately seven months later, on July 30, 2025, Plaintiffs collectively filed a new motion to compel concerning OpenAI's alleged failure to produce text and social media messages from their custodians. (*See* ECF 390).[6] The issues that Plaintiffs raised in their new motion are summarized as follows: (1) OpenAI over-redacted the names of conversation participants in Sam Altman's text messages; (2) OpenAI was withholding responsive messages from multiple custodians; and (3) Plaintiffs raised certain technical questions regarding production. (*Id.*). OpenAI filed a response on August 4, 2025, explaining that it was: (1) redoing the collection, review, and production of messages for two custodians due to an "error in the process for collecting and producing text and social media messages" that was discovered after Plaintiffs' motion was filed; (2) reassessing all of its collection and review processes to ensure the error was an isolated incident; and (3) reproducing text messages with fewer personal phone numbers redacted. (*See* ECF 432).

The Court heard oral argument on this dispute at the August 12, 2025, discovery status conference. (*See* ECF 459). At the August 12 conference, I ordered OpenAI to: (1) inform Plaintiffs of the identities of the owners of any phone numbers produced where a name is not otherwise provided; (2) finish its production of social media messages to Plaintiffs by August 22, 2025; (3) file a sworn declaration by August 15, 2025, explaining the procedures OpenAI followed to collect and review text and social media messages from Sam Altman, Greg Brockman, and Varun Shetty; and (4) file an additional sworn declaration by August 22, 2025, outlining the procedures for collecting and reviewing text and social media messages for the remaining custodians who were current OpenAI employees at that time. (*See* ECF 459 at 3-4).

---

[6] The unredacted, sealed version of the motion is available at ECF 390. The redacted, public version is available at ECF 391.

4

Counsel for OpenAI filed sworn declarations as directed on August 15, 2025, (the "August 15 Gratz Declaration"), (ECF 461), and August 22, 2025, (the "August 22 Gratz Declaration"), (ECF 482).

In response to OpenAI's two declarations, Plaintiffs filed a renewed letter motion seeking to compel OpenAI to reconduct its custodial interview process for custodians' text and social media messages on September 5, 2025. (*See* ECF Nos. 528, 529).[7] In their renewed motion, Plaintiffs identified the following alleged deficiencies with OpenAI's collection and production of text and social media messages:

> (1) custodial interviews were conducted by surveys distributed to custodians without a contemporaneous interview of the custodian by an attorney (either in-house or outside counsel);
>
> (2) OpenAI did not collect and run search terms across custodians' texts and social media messages, even where the custodian used text or social media for work, if the custodian indicated in the survey that they did not use those platforms for "potentially responsive communications;"
>
> (3) OpenAI permitted personal counsel for Mr. Altman and Mr. Brockman to perform an initial responsiveness review of text and social media messages that hit on the agreed-upon search terms; in the initial responsiveness review, personal counsel redacted or withheld messages that they deemed were "personal" in nature, taking review of those messages from outside counsel;

---

[7] The unredacted, sealed version of the motion is available at ECF 529. The redacted, public version is available at ECF 528.

(4) Mr. Altman's and Mr. Brockman's personal counsel did not produce a log of their redactions, preventing Plaintiffs' counsel from challenging any redactions or withheld documents; and

(5) Mr. Altman's and Mr. Brockman's personal counsel's application of "personal" redactions was too broad, and unnecessarily prevents discovery into relevant information that would otherwise not be exempt on other grounds (e.g., privilege). (ECF 529).

OpenAI filed its opposition on September 12, 2025, asserting that their custodial investigation, collection, and review process was appropriate, and that the sequencing of the collection and production procedures for Mr. Altman and Mr. Brockman (e.g., personal counsel review, followed by OpenAI's outside counsel's responsiveness review) was appropriate and necessary to protect Mr. Altman's and Mr. Brockman's privacy. (*See* ECF 584).[8] The Court heard oral argument on this issue at the September 25, 2025, discovery status conference, and reserved its ruling. (ECF 612 at 4).

Then, before the October discovery conference, OpenAI filed their own motion seeking to compel the Daily News to reconduct its collection and production of texts and social media messages of its custodians. (*See* ECF Nos. 642, 643).[9] OpenAI asserts that the Daily News failed to collect and search text and social media messages for custodians who indicated that they used text and/or social media for work. (ECF 642). Daily News filed its opposition on October

---

[8] The unredacted, sealed version of the motion is available at ECF 584. The redacted, public version is available at ECF 586.

[9] The unredacted, sealed version of the motion is available at ECF 642. The redacted, public version is available at ECF 643.

17, 2025, arguing that they engaged in sufficient document collection, search, and production practices. (ECF 665). The Court heard oral argument on OpenAI's motion at the October 29, 2025, discovery status conference, and reserved ruling on this issue.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The party moving to compel "bears the burden of demonstrating relevance and proportionality." *See Winfield v. City of New York*, 15-CV-5236 (LTS) (KHP), 2018 WL 840084, at *3 (S.D.N.Y. Feb. 12, 2018) (emphasis added). *See also New York Times*, 757 F. Supp. 3d at 597. "When broader discovery is sought, the Court should determine the scope according to the reasonable needs of the action, depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Int'l Code Council, Inc. v. Skidmore, Owings & Merrill, LLP*, 24-MC-412 (DEH) (VF), 2025 WL 1936704, at *2 (S.D.N.Y. July 15, 2025). "Proportionality and relevancy are assessed together, and the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Gilead Sciences, Inc. v. Khaim*, 779 F. Supp. 3d 300, 309 (E.D.N.Y. 2025) (internal quotation marks omitted). "It is within a Magistrate Judge's discretion to decide whether discovery requests are relevant and proportional," *Radio Music License Committee, Inc. v. Broadcast Music, Inc.*, 347 F.R.D. 269, 273 (S.D.N.Y. 2024), and "Rule 26 gives a district court broad discretion to impose limitations or conditions on discovery[,]

which extends to granting or denying motions to compel." *Edmar Fin. Co., LLC v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024).[10]

### III. DISCUSSION

#### A. Custodial Interviews and Collection of ESI

In any lawsuit, counsel of record is obligated under Rule 26(g)(1) to ensure the "completeness and accuracy of the information produced" to the opposing party. *Grullon v. Lewis*, 24-CV-4892 (VEC) (SN), 2025 WL 1693425, at *1 (S.D.N.Y. June 17, 2025). When an attorney signs a discovery response, they certify "that the response is complete and correct to the best of the attorney's knowledge, information, and belief *formed after a reasonable inquiry*." *Id.* (internal quotation marks omitted) (emphasis in original). Thus, Rule 26 imposes a duty on counsel of record to "monitor compliance so that all sources of discoverable information are identified and searched." *Id.* While it is well recognized in this district that a producing party is in the "best position to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information," *Lollytogs, Ltd v. Meadow Oaks Educ. Foundation*, 24-CV-7682 (JAV), 2025 WL 2382317, at *1 (S.D.N.Y. July 23, 2025),[11] courts strongly disfavor unquestioning reliance by counsel on a client's representation that "no responsive records exist," (e.g., self-collection). *Id*. (citing *Thomas v. City of New York*, 336 F.R.D. 1, 5 (E.D.N.Y. 2020) ("Defendants' position—

---

[10] "A court can … limit the frequency or extent of discovery if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Delta Air Lines, Inc. v. Lightstone Group, LLC*, 21-MC-374 (RA) (OTW), 2021 WL 2117247, at *2 (internal quotation marks omitted).

[11] The Sedona Conference also recognizes that, typically, a "responding party … is generally best situated to determine and implement appropriate procedures, methodologies, and technologies," for responding to discovery requests. The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1, 120 (2018).

'custodial interviews reveal there was nothing relevant to this lawsuit discussed on the chat'—is a form of self-collection which is strongly disfavored.")). Some degree of "self-collection" may be appropriate, however, if counsel of record is "actively involved in searching [for] and producing discovery." *Grullon*, 2025 WL 1693425, at *1. *C.f. Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020) (explaining that instructing a client to collect relevant documents "without any demonstrated follow up" by counsel is self-collection that falls "well below an acceptable standard for document collection.") (emphasis added); *Thomas*, 336 F.R.D. at 5 ("That is, Defendants' counsel is relying on their clients' statements that these chats do not contain pertinent or relevant information. It is unclear why Defendants' counsel chose not to review the chats.").

Plaintiffs and OpenAI both assert that the other failed to properly collect and produce responsive text and social media communications for various custodians. The parties' collective complaints primarily relate to the initial custodial interviews (or lack thereof) and subsequent determinations of whether to run search terms and produce a custodian's text and/or social media messages. As such, it is worth reviewing each of the parties' procedures in more detail.

### 1. The Daily News's Custodial Interview and Collection Procedures

We first begin with the Daily News. It appears that OpenAI seeks to compel Daily News to collect and search the text and social media messages for all custodians listed in Daily News's response to OpenAI's interrogatory number 20. (*See* ECF 642); (ECF 643-4).

At the October 29 conference, counsel for the Daily News represented that outside counsel conducted custodial interviews of all 19 custodians, each lasting approximately 1 hour or more, where counsel walked through different text and social media applications and platforms. (Oct. 29, 2025, Tr., ECF 799, at 102-103) (hereinafter Oct. 29 Tr.). If a custodian

indicated that they used a particular application or platform for work purposes, counsel engaged in follow-up discussions regarding <u>how</u> that particular custodian used it for work. (*Id*.). Based on the live interviews and the custodians' answers, outside counsel decided whether to collect and produce any such text and/or social media messages based on a proportionality determination. (*Id*.). As one example, counsel for Daily News explained that for Mr. Loretto, who indicated that he used text messaging for work, a decision was made *not* to collect his messages after further discussions revealed that he used text messaging for purely administrative purposes (e.g., not coming to the office, going on vacation). (*Id.* at 103-104). Because those messages were determined not to be responsive to the case, Daily News concluded that production was not proportional and did not collect Mr. Loretto's messages. (*Id.* at 103-104, 107)..[12]

OpenAI asserts that it was improper for Daily News to not collect, run search terms against, and produce messages for the 15 custodians who, like Mr. Loretto, indicated that they used text messaging for work and for the 4 custodians who indicated that they used social media for work, (ECF 642), because Plaintiffs' "sworn interrogatory responses … averred that Mr. Loretto, and 14 other Identified Custodians, communicate via text message about the creation of the asserted works and/or the allegations in the Complaint." (ECF 642 at 2). OpenAI's interrogatory number 20 reads:

> For each of Plaintiffs' ESI custodian in this case … Identify all programs, applications, or methods of Communication that the custodian has used for Work-Related Communication(s) at any time between December 2015 and the present. Include, for

---

[12] (*See also* ECF 655 at 2) ("Because these seven custodians reported that they did not use text messages for substantive work communications relating to the issues in this lawsuit, *Daily News* Plaintiffs made a proportionality determination that the potential benefit/relevance of these communications was outweighed by the burden of collection.").

> example, the following programs or applications if they are applicable: text, Short Messaging Service (SMS), Multimedia Messaging Service (MMS), iMessage, Android Messages, Twitter, X.com, Discord, Slack, Telegram, WhatsApp, WeChat, Viber, Beeper, Microsoft Teams, Facebook, Facebook Messenger, Skype, Line, Google Chat, Google Messages, Webex, Signal, Threema, and Reddit.

(ECF 643-4 at 3).

In response, Daily News identified custodians who indicated that they used one or more various text and/or social media applications for work, and included the following objections:

> The Daily News objects to this Interrogatory as overbroad and unduly burdensome because it requests information going back to December 2015, notwithstanding that all of Defendants' custodial search parameters to-date have been from January 1, 2018 forward, and further because it seeks "all programs, applications, or methods of Communication that the custodian has used for Work-Related Communication(s)" <u>without regard to whether those programs, applications, or methods were used to communicate about subject matter that may be relevant to any issues, claims, or defenses in this matter</u>. Subject to these objections, Daily News responds as follows: The methods of Communication used by each of the Daily News' ESI Custodians are set forth in the list below.

(ECF 643-4 at 3-4).[13] The text of interrogatory number 20, and the Daily News's response, are thus necessarily <u>broader</u> than how OpenAI now characterizes them. The Daily News's response includes custodians who used text and/or social media application for <u>any</u> work purpose, not just those that are "about the creation of the asserted works and/or the allegations in the Complaint." During live custodial interviews, outside counsel for the Daily News engaged in follow-up discussions with these custodians and determined that because their use of text messaging or social media applications, albeit for work purposes, did <u>not</u> relate to the claims or

---

[13] The same objections are included in the responses by the Sun Sentinel, the Chicago Tribute, the Denver Post, the Pioneer Press, the Orange County Register, the Orlando Sentinel, and the Mercury News. (*See* ECF 643-4).

11

defenses at issue in this case (e.g., were not potentially responsive communications), that collection and production of those messages would not be proportional. OpenAI points to nothing to suggest that such a proportionality determination is improper under Rule 26, or that the methods chosen by Daily News in reaching this determination were insufficient.

Accordingly, OpenAI's motion is **DENIED**.

### 2. *OpenAI's Custodial Interview and Collection Procedures*

Next, we turn to OpenAI's methodology. Plaintiffs' motion seeks to compel OpenAI to reconduct its custodial interview process for its custodians (other than Mr. Altman and Mr. Brockman)[14] and to collect and search the text and/or social media messages for any custodians that may have used text and/or social media to communicate about issues related to this case. (ECF 528).

First, outside counsel prepared a set of questions (for custodians other than Mr. Altman and Mr. Brockman) designed to determine whether these custodians used one or more various text and/or social media messaging applications or platforms for "potentially responsive communications," regardless of whether on a personal or firm-issued device. (ECF 482 at 2-3). In-house counsel then converted the questions into a Google Survey that was distributed to OpenAI's 19 custodians. (*Id.* at 3).

For 8 of OpenAI's custodians, their responses indicated that they did not use text and/or social media for "potentially responsive communications," and OpenAI engaged in some form of follow-up communications based on those responses. (ECF 482 at 3). For 7 of those 8 custodians, in-house counsel engaged in subsequent discussions regarding the custodians'

---

[14] Counsel used different procedures for the collection and production of text and social media messages for Mr. Altman or Mr. Brockman, which are summarized in Section III.B. below.

survey responses and, after these discussions, chose not to collect any documents or communications. (*Id.* at 4-5). For one of the 8, OpenAI represents that outside counsel reviewed the custodian's public social media account, determined that the posts and private messages were non-responsive, and chose not to collect any documents or communications. (*Id.* at 6).

Another 6 of OpenAI's custodians indicated that they did <u>not</u> use text and/or social media for "potentially responsive communications," and OpenAI represents that it did not collect any documents or communications from these custodians based on their survey responses.[15] (ECF 482 at 3-9).

The remaining 5 of OpenAI's custodians indicated in their survey that they <u>did</u> use text and/or social media for "potentially responsive communications," (ECF 482 at 9), and OpenAI undertook efforts to collect documents and communications and represents that they are currently undergoing or have finished producing such communications to Plaintiffs. (*Id*. at 9-13). Counsel for OpenAI also represented at the October 29 conference that since the filing of Plaintiffs' motion, there "have been live interviews" conducted by counsel with each of the custodians who are still OpenAI employees. (Oct. 29 Tr. at 45).

There is one stark difference between OpenAI's procedures and Daily News's procedures. For the 6 of OpenAI's custodians who indicated they did not use text message and/or social media for potentially responsive communications, OpenAI opted to not collect and search their text and/or social media messages based <u>solely</u> on the custodians' responses to the Google Survey. This decision was apparently made without any contemporaneous live

---

[15] The August 22 Gratz Declaration does not explain why OpenAI engaged in follow-up communications with 8 of the custodians that indicated that they did not use text and/or social media messaging for work, but not these 6 custodians. (ECF 482).

interview or follow-up questions from counsel. Daily News, on the other hand, conducted a live interview of every single one of their custodians.

While this form of "[r]eliance upon a client's representation that no responsive records exist" may, on its own, have been insufficient to comply with OpenAI's discovery obligations, *see Lollytogs*, 2025 WL 2382317, at *1, OpenAI has since conducted "live refresher interviews with the 20 current employee custodians not represented by personal counsel," (*see* Oct. 29 Tr. at 45). Moreover, at the October 29 conference, OpenAI represented that they have produced additional documents "based on some of those [refresher] interviews, and [it] anticipate[s] that any such production will be done in advance of the scheduled depositions." (Oct. 29 Tr. at 56). This "demonstrated follow-up" and additional production is sufficient for document collection purposes at this time in the absence of any other indicia that OpenAI's procedures are insufficient. *See Herman*, 334 F.R.D. at 386.

Accordingly, because Daily News engaged in appropriate proportionality determinations under Rule 26 and OpenAI has demonstrated that its collection and production procedures are now appropriate for its custodians based on its follow-up interviews, OpenAI's motion is **DENIED**, and Plaintiffs' motion is **DENIED in part as MOOT** with respect to custodians other than Mr. Altman and Mr. Brockman.[16] OpenAI is directed to identify for Plaintiffs how many follow-up interviews were conducted, for whom, and when they were conducted.

---

[16] At the October 29 conference, counsel for Daily News suggested that different standards should apply to document collection and production for Daily News and OpenAI. (Oct. 29 Tr. at 106-107). Daily News provides no case law or any other justification for this assertion, and the Court declines to adopt different standards for production for parties in the same case.

B. Personal Counsel's Review of Mr. Altman's and Mr. Brockman's Messages

The remaining dispute concerns the review and redactions of text and social media messages conducted by Mr. Altman's and Mr. Brockman's personal counsel *before* outside counsel for OpenAI conducted their responsiveness review. Plaintiffs seek an order compelling OpenAI to redo its review of Mr. Altman's and Mr. Brockman's text message and social media messages.

As described in the August 15 Gratz Declaration, collection and review of Mr. Altman's and Mr. Brockman's messages took place as follows: (1) outside counsel shared the Google Survey with Mr. Altman's and Mr. Brockman's personal counsel; (2) personal counsel "discussed" with their client(s) whether they used text and/or social media messaging applications or platforms for potentially responsive communications; (3) personal counsel imaged their client(s)' phones and relevant social media accounts; (4) personal counsel ran (or is running)[17] the agreed-upon search terms against the collected text and social media messages; (5) personal counsel reviewed messages that hit on the search terms and redacted or withheld messages that personal counsel deemed "purely personal" and those that are not about OpenAI work and (6) personal counsel shared the remaining messages with OpenAI's outside counsel for responsiveness and privilege review. (*See* ECF 461).

First, it appears that OpenAI and Mr. Altman's and Mr. Brockman's personal counsel's use of privacy redactions are being used similarly to a privilege. Personal privacy is not a complete bar to discovery like a privilege, and should not be treated as such. *See* The Sedona

---

[17] Because the full-list of agreed-upon search terms was seemingly not sent Mr. Altman's and Mr. Brockman's personal counsel, outside counsel represented that the collection process was being redone with the full list of search terms. (ECF 461). OpenAI does not explain why the full list of search terms was not sent to personal counsel in the first instance.

Conference, *Primer on Social Media*, 20 SEDONA CONF. J. 1, 28 n. 48 (2019) ("Privacy concerns should not be confused with discovery exclusions such as legal privileges."). Without a contemporaneous log of search term hits that are redacted as "purely personal," it is also impossible for Plaintiffs to understand the basis for any specific redactions, which is troubling given OpenAI's prior overuse of attorney-client privilege redactions. *See In re OpenAI, Inc., Copyright Infringement Litigation*, --- F. Supp. 3d ---, 2025 WL 2799890 (S.D.N.Y. 2025).

Second, it is concerning that Mr. Altman's and Mr. Brockman's personal counsel conducted their privacy review <u>before</u> OpenAI's outside counsel conducted its responsiveness review. Despite the tension between discovery in civil litigation and an employee's expectation of personal privacy, the discovery rules do not meaningfully differentiate "between public and private content." *See Seattle Times v. Rhinehart*, 467 U.S. 20, 30 (1984) ("Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties."); *see also* Agnieszka A. McPeak, *Social Media, Smartphones, and Proportional Privacy in Civil Discovery*, 64 U. KAN. ST. L. REV. 235, 271 (2015). Thus, use of personal devices for work purposes (or vice versa) can expose an employee's personal data to discovery. *See* Agnieszka, 64 U. KAN. ST. L. REV. at 244-45.[18] While a court can and should emphasize the use of various privacy protections to prevent harassment or

---

[18] *See also Muslims on Long Island, Inc. v. Town of Oyster Bay*, 2025 WL 1582250, at *3 (E.D.N.Y. June 4, 2025) (allowing discovery into personal devices where sufficient evidence existed to suspect that an "employee's personal accounts or mobile devices were used for work purposes").

embarrassment of litigants or third parties,[19] and producing parties are *generally* best situated to determine the appropriate procedures and methodologies for collecting and producing ESI,[20] privacy considerations are just one factor in assessing the proportionality of discovery. *Primer on Social Media*, 20 SEDONA CONF. J. at 27-28.[21]

      Here, by virtue of making a determination that a particular message is purely personal, Mr. Altman's and Mr. Brockman's personal counsel are, in essence, conducting their own responsiveness review (i.e., if something is purely personal, it is not responsive or relevant) before OpenAI's outside counsel. And it does not appear from the August 15 Gratz Declaration that outside counsel can review these redactions for accuracy, since OpenAI does not receive the messages until <u>after</u> they are redacted. This procedure is not appropriate. The obligations under Rule 26 run to and stop with counsel of record, and OpenAI's outside counsel's unquestioning reliance on the representations by Mr. Altman's and Mr. Brockman's personal counsel (who are not involved in this case or beholden to this Court) is self-collection that falls short of the requisite standard for compliance with Rule 26. This is compounded by the fact that counsel of record—for both Plaintiffs and Defendants—do not appear to have a common understanding of what "purely personal" means in this context. (*See, e.g.*, ECF 529 at 7). Moreover, OpenAI's counsel of record has not explained why commonly utilized protections

---

[19] *See* The Sedona Conference, *Primer on Social Media*, 20 SEDONA CONF. J. 1, 28 n. 48 (2019) (citing Fed. R. Civ. P. 26(b)(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.")

[20] *Lollytogs*, 2025 WL 2382317, at *1.

[21] *See also Reid v. Ingerman Smith LLP*, 2012-0307 (ILG) (MDG), 2012 WL 6720752, at *2 (E.D.N.Y. Dec. 27, 2012) ("While plaintiff is correct that disclosure of her personal social media account may raise privacy concerns, such a consideration is more 'germane to the question of whether requested discovery is burdensome or oppressive and whether it has been sought for a proper purpose' rather than to affording a 'basis for shielding those communications from discovery.'").

(e.g., protective orders, Attorney's Eyes Only designations) are insufficient to protect the privacy interests of Mr. Altman and Mr. Brockman, such that this sequence of review is necessary and appropriate. *See Hasemann v. CVS Pharmacy Inc.*, 19-MC-2518 (EK), 2023 WL 1785545, at *2 (E.D.N.Y. Feb. 6, 2023) ("Courts regularly rely on protective orders to protect privacy considerations, including in class-action suits."). *See also Primer on Social Media*, 20 SEDONA CONF. J. at 29 ("For appropriate redactions, this may include 'Confidential Information' or 'Attorneys Eyes Only' designations, data security protocols, filing under seal, or other procedures that can be documented via confidentiality agreements or other stipulated protective orders.").

Given the deficiencies in OpenAI's procedures as outlined above, Plaintiffs' motion is **GRANTED in part** with respect to the collection and production of Mr. Altman's and Mr. Brockman's text and social media messages. Outside counsel for OpenAI is directed to re-run the agreed-upon search terms against the messages contained in the forensic images of Mr. Altman's and Mr. Brockman's phones and relevant social media accounts that personal counsel collected with an e-discovery vendor. After personal counsel has conducted its privacy review and applied any appropriate privacy redactions, outside counsel shall provide Plaintiffs with the hit count of any hits on the agreed-upon search terms that appear in personal counsel's privacy redactions, and a log of such redactions explaining why the redacted messages are purely personal and not responsive.[22] The parties are directed to meet and

---

[22] To the extent not already provided, OpenAI, or personal counsel, as applicable, shall also provide a log of any redactions made on the basis of privilege.

confer on the categories of messages that fall under the definition of "purely personal."[23] The parties are reminded that, at its core, the Sedona Conference emphasizes that parties should work cooperatively to protect personal privacy interests. *See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1, 163 (2018).

IV. **CONCLUSION**

For the foregoing reasons, OpenAI's motion is **DENIED**, Plaintiffs' motion is **DENIED in part as moot** with respect to the 19 custodians, and Plaintiffs' motion is **GRANTED in part** and with modifications as set forth above with respect to Mr. Altman and Mr. Brockman.

The Clerk of Court is respectfully directed to close ECF Nos. 528, 529, 642, and 643.

**SO ORDERED.**

_s/ Ona T. Wang_

Dated: December 3, 2025  **Ona T. Wang**
New York, New York  United States Magistrate Judge

---

[23] If the parties cannot agree on the categories of messages that fall under the definition of "purely personal," they are directed to file a letter on the docket informing the Court, and the Court will schedule a confidential settlement conference call.